[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11809
_____

D.C. Docket No. 8:15-cr-00476-EAK-JSS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ERNEST L. CHAMBLISS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 27, 2019)

Before ED CARNES, Chief Judge, MARTIN, and ROGERS,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable John M. Rogers, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Ernest Chambliss, a federal prisoner serving a 262-month sentence, appeals his conviction and sentence for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). Among other things, Chambliss here challenges the district court's decisions to deny his request for an entrapment instruction and to classify him as an armed career criminal under the Armed Career Criminal Act ("ACCA"). After careful consideration and with the benefit of oral argument, we affirm.

## I.

One day in mid-April 2015, Chambliss and his friend, Stuart Rucker, were busy moving some of Chambliss's belongings out of Rucker's closet. Chambliss had recently reconciled with his girlfriend and was in the process of retrieving his things. As the two friends moved items out of the closet and into Chambliss's truck, Chambliss asked Rucker to grab a camouflage hat lying on one of the closet shelves but to "be careful" while doing so. Rucker did as he was asked and quickly discovered why Chambliss had warned him to be careful: nestled within the hat was a black handgun.

As a convicted felon himself, Rucker immediately told Chambliss that he didn't want anything to do with the gun, rewrapped the gun inside the hat, and tried to hand it back. Chambliss, however, refused to take the gun and instead asked Rucker to hold onto it until Chambliss could come by later to retrieve it. Rucker

repeated that he didn't want the gun in his house but reluctantly agreed to Chambliss's request and put the gun back in the closet.

Around the same time, a confidential informant named Randy Hammond caught wind from a mutual acquaintance of his and Chambliss's that Chambliss was looking to sell a gun. Hammond frequently bought drugs from Chambliss, so the two men were well-acquainted. Hammond flagged the potential gun sale to his handler, Detective Scott Huber, who notified Special Agent Konstantinos Balos. Detective Huber and Agent Balos hatched a plan for Hammond to purchase the handgun from Chambliss along with the usual drugs, so as not to arouse suspicion. Although the officers briefly considered using an undercover officer to complete the purchase, they decided to use Hammond because of his relationship with Chambliss. The officers paid Hammond $600 for his assistance.

The operation took place on April 16, 2015. In preparation, the officers outfitted Hammond with an audio video recording device, checked him for contraband, and handed him enough money to purchase the gun and two pills. Hammond then rode his bike over to Chambliss's house, where he paid Chambliss for the contraband. Shortly after that, Chambliss called Rucker and asked him to bring the gun over. The audio recording device captured Chambliss's side of the conversation in full:

> Hey, Hey, Hey, remember that, that little thing I put in your clothes? Bring that with you when you come. That thing you got. That black

3

thing in your clothes.  (inaudible)  Yeah, the, the, the, the pea shooter. Remember?  It's the black thing.  Yeah, you was.  Yeah.  <u>The gun man, the gun man, the gun.</u>  Yes, do it, bye.

Because Rucker had trouble remembering what Chambliss was talking about, he went to ask Chambliss in person.  After clarifying that Chambliss wanted him to "bring the gun over," Rucker went back home, grabbed the camouflage hat with the gun inside, placed both items inside a cooler, and drove the cooler over to Chambliss's house.  Chambliss then told Hammond to get the gun from the kitchen.  Hammond opened the cooler in the kitchen, checked to make sure the gun was inside, and took everything back with him to Agent Balos and Detective Huber.

A second operation took place on April 22, 2015.  This time, Hammond was tasked with purchasing ammunition from Chambliss, who agreed to help Hammond "get some" bullets for the gun.  Half a year later, a federal grand jury indicted Chambliss on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Officers also arrested and charged Rucker with the same crime for possessing Chambliss's gun.

Chambliss decided to go to trial and filed a motion in limine to exclude evidence of his drug dealing activities as inadmissible extrinsic evidence of a crime and as unfairly prejudicial evidence.  The district court denied the motion, concluding that the evidence was "necessary to complete the [government's] story

4

of the crime," and advised Chambliss that he could request a limiting instruction if he wished to reduce the risk of prejudice. Chambliss never made that request.

Trial began on November 28, 2016 and lasted five days. Chambliss twice moved for a judgment of acquittal, which the district court denied. Chambliss also unsuccessfully requested an entrapment instruction. On December 2, the jury found Chambliss guilty of possessing a firearm as a convicted felon. A few days later, Chambliss filed a motion for a new trial, arguing that the district court erred when it denied his motion in limine and refused to give an entrapment instruction and that the government failed to timely disclose Hammond's suitability assessment as a confidential informant. The district court denied the motion.

At sentencing, the probation officer and government relied on four of Chambliss's prior state convictions to treat him as an armed career criminal under ACCA: (1) selling or delivering cocaine on November 6, 1997; (2) possessing cocaine with intent, manufacturing of a controlled substance, and selling or delivering cocaine on November 7, 1997; (3) selling or delivering cocaine on December 14, 1998;[1] and (4) resisting an officer with violence on December 11, 1998. Chambliss objected to being characterized as an armed career criminal, saying that the first and second convictions arose from one continuing drug offense

---

[1] Although the presentence investigation report states that Chambliss pled nolo contendre to possession of cocaine and sale or delivery of cocaine on September 28, 1998, the record reflects that the offense took place on December 14, 1998.

5

and therefore could not count as two separate offenses for purposes of sentencing under ACCA. He also argued that two of his convictions were only for the "sale and delivery" of cocaine as opposed to manufacture or distribution, which meant they did not qualify as serious drug offenses. Last, he contended that his conviction in Florida for resisting an officer with violence could not categorically qualify as a violent offense within the meaning of ACCA's elements clause.

The district court rejected Chambliss's arguments, ruled that Chambliss is an armed career criminal, and sentenced him to 262 months imprisonment. Chambliss timely appealed.

## II.

Chambliss raises four issues on appeal. First, he argues the government did not introduce sufficient evidence that he actually or constructively possessed the firearm sold. Second, he argues the district court erred when it denied his request to give the jury an entrapment instruction. Third, he argues the district court abused its discretion when it denied his motion for a new trial. Last, he argues the district court erred when it applied the ACCA enhancement for sentencing purposes. We address each argument in turn.

### A.

We review de novo whether a verdict is supported by sufficient evidence, United States v. Brantley, 803 F.3d 1265, 1270 (11th Cir. 2015), "view[ing] the

6

evidence in the light most favorable to the Government and resolv[ing] all reasonable inferences and credibility evaluations in favor of the verdict." United States v. Isnadin, 742 F.3d 1278, 1303 (11th Cir. 2014). "Evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." Isnadin, 742 F.3d at 1303 (quotation marks omitted).

Here, a reasonable juror could have found beyond a reasonable doubt that Chambliss constructively possessed a gun. As the government points out in its brief, Chambliss was heard on tape ordering Rucker to bring the gun over so he could sell it to Hammond. That same recording also captured Chambliss urging Rucker to remember "that little thing [the gun] I put in your clothes." A reasonable juror could find from this that Chambliss was not only aware of the firearm's existence but also had the ability and intent to control it, which is enough to show constructive possession. See United States v. Perez, 661 F.3d 568, 576 (11th Cir. 2011) (per curiam); see also United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004) (per curiam). Chambliss does not dispute that he was a convicted felon at the time of possession or that the gun traveled in interstate commerce. As a result, there was sufficient evidence to support his conviction under 18 U.S.C. § 922(g)(1).

7

B.

Chambliss's argument that the district court erred when it denied his request to give the jury an entrapment instruction is similarly without merit.  As this Court recently clarified in United States v. Dixon, 901 F.3d 1322 (11th Cir. 2018), we review de novo a district court's decision not to instruct the jury on entrapment. Id. at 1346–47.  "Whether a defendant is entitled to an entrapment instruction depends on whether there is sufficient evidence from which a reasonable jury could find entrapment."  Id. at 1347 (quotation marks and emphasis omitted).

To receive an entrapment instruction, Chambliss had to put forth some evidence—"more than a scintilla"—that the government both induced the crime and that Chambliss was not predisposed to commit the crime.  United States v. Ryan, 289 F.3d 1339, 1343 (11th Cir. 2002) (per curiam) (quotation marks omitted).  Chambliss argues that he met this burden because there was no evidence suggesting that he was "in the business of selling firearms."  This argument misapprehends the nature of Chambliss's conviction.  Even if the government, through Hammond, induced Chambliss to sell the firearm, Chambliss was convicted for possessing the firearm—not selling it.  See Dixon, 901 F.3d at 1347. Chambliss has offered no evidence to show that the government induced him to possess the gun in the first place.  In addition, Hammond testified that he only approached his handler after he caught wind that Chambliss was looking to sell a

8

gun he presumably already owned.  This strongly suggests that Chambliss's possession of the gun predated any governmental involvement in the case, so he could not have been induced.  As a result, the district court did not err when it denied Chambliss's request for an entrapment instruction.

C.

Chambliss next argues the district court erred when it denied his motion for a new trial.  We review a district court's denial of a motion for a new trial for abuse of discretion.  United States v. Scrushy, 721 F.3d 1288, 1303 (11th Cir. 2013).  Chambliss advances three grounds for error: first, the district court failed to give an entrapment instruction; second, the district court should have granted his motion in limine to exclude evidence of his drug dealing activities; and third, the government failed to disclose Hammond's suitability assessment as a confidential informant before trial, which hampered trial counsel's ability to impeach Hammond at trial.  All fail to persuade.

As discussed in the previous section, the district court did not err in denying Chambliss's request for an entrapment instruction.  The court therefore could not have abused its discretion in declining to grant his motion for a new trial on that basis.  The other two arguments fare little better.

Although Chambliss frames the second ground for finding error as whether the district court erred when it denied his motion for a new trial, the core of his

argument is that the court erred in denying his motion in limine—a determination we also review for abuse of discretion.  See United States v. Thompson, 25 F.3d 1558, 1563 (11th Cir. 1994).  Here, it's clear the district court did not abuse its discretion in denying Chambliss's motion in limine request to exclude evidence of his drug dealing activities at trial.

As the district court correctly recognized, Chambliss's drug dealing activities were part and parcel of the transaction involving the gun and therefore did not qualify as inadmissible extrinsic evidence of a crime under Federal Rule of Evidence 404(b).  See United States v. Nerey, 877 F.3d 956, 974 (11th Cir. 2017) (explaining Rule 404(b) does not apply to evidence that is "(1) part of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense").  The evidence explained Hammond's preexisting relationship with Chambliss as well as the reason why the officers decided to rely on Hammond for the operation rather than an undercover officer.  This is plainly intrinsic evidence that does not fall within the ambit of Rule 404(b).  See United States v. McLean, 138 F.3d 1398, 1403–04 (11th Cir. 1998).

Neither was the probative value of the drug sales evidence substantially outweighed by the risk of unfair prejudice to Chambliss, such that the evidence should have been excluded under Federal Rule of Evidence 403.  Not only did

Chambliss decline the district court's offer to give a limiting instruction on the drug evidence to reduce the risk of prejudice at trial, counsel for Chambliss explicitly mentioned Chambliss's drug-dealing activities during closing argument to argue Chambliss's innocence.  Trial counsel argued to the jury that Rucker was the one who actually owned the gun and that he let Chambliss take the money because Rucker owed Chambliss money for drugs.  Chambliss cannot on the one hand claim the evidence ran an unacceptably high risk of prejudicing him at trial, while at the same time relying on that same evidence as a central part of his theory for acquittal.  See United States v. Sophie, 900 F.2d 1064, 1075 (7th Cir. 1990) (persuasive authority).  Because the district court did not abuse its discretion when it denied his motion in limine, it did not err when it denied his motion for a new trial on the same grounds.

As for Chambliss's third argument—that the government did not timely disclose Hammond's suitability assessment in advance of trial—we discern no error in the district court's decision to deny him a motion for a new trial on that ground.  To the extent this is a claim made pursuant to Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), it fails.  "To establish a Brady violation, the defendant must show that (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the

11

favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir. 2002).

Chambliss does not attempt to argue that the pre-trial disclosure of the suitability assessment might have impacted the outcome. To the contrary, he concedes that he was able to cross-examine Hammond based on the suitability assessment. Although the government did not furnish Chambliss with a copy of the suitability assessment before trial, the government did provide notice of much of the impeachment information in it through pre-trial communications with Chambliss's attorney. The district court therefore did not err when it denied Chambliss's motion for a new trial on this basis.

### D.

Chambliss's final argument on appeal is that the district court erred when it classified him as an armed career criminal under ACCA. He contends that because two of his three state drug offenses "happened in the same 24-hour span and at the same location," they should have been counted as one offense for ACCA enhancement purposes. Alternatively, he argues that the Shepard[2] documents for

---

[2] Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005).

two of his drug convictions fail to show he was convicted of a qualifying drug offense under ACCA.[3]

We review de novo whether a defendant's prior conviction qualifies as a violent felony or serious drug offense under ACCA and whether a defendant's prior offenses occurred on separate occasions within the meaning of ACCA. See United States v. Proch, 637 F.3d 1262, 1265 (11th Cir. 2011); United States v. Canty, 570 F.3d 1251, 1254–55 (11th Cir. 2009). We conclude the district court correctly applied the ACCA enhancement to Chambliss.

ACCA imposes a fifteen-year mandatory minimum sentence on people convicted under 18 U.S.C. § 922(g)(1) if they have "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The government, however, relied on four convictions to trigger the ACCA enhancement: (1) selling or delivering cocaine on November 6, 1997; (2) possessing cocaine with intent, manufacturing of a controlled substance, and selling or delivering cocaine on November 7, 1997; (3) selling or delivering cocaine on December 14, 1998; and (4) resisting an officer with violence on December 11, 1998. Chambliss cannot

---

[3] Chambliss additionally argues that his conviction for resisting an officer with violence under Fla. Stat. § 843.01 does not categorically constitute a violent felony. Because it is clear the district court correctly counted and relied on his three state drug offenses to apply the ACCA enhancement, we need not address this argument.

13

prevail on appeal unless he shows the district court erroneously relied on two of these convictions to support the ACCA enhancement. This he cannot do.

To begin, Chambliss's convictions for selling cocaine on November 6 and November 7 were properly counted as two offenses because they "arose out of . . . separate and distinct criminal episode[s]." United States v. Sneed, 600 F.3d 1326, 1329 (11th Cir. 2010) (quotation marks omitted). As this Court has said, "[t]wo offenses are distinct if some temporal break occurs between them." Id. at 1330. Here, the offenses were committed on different days, and the Shepard documents reflect that Chambliss engaged in different behavior on each occasion. On November 6, Chambliss unlawfully sold or delivered cocaine. The next day, he also manufactured and possessed it. The district court therefore did not err when it chose to count Chambliss's November 6 and November 7 offenses separately under ACCA.

It is likewise clear that Chambliss's November 6, 1997 and December 14, 1998 drug offenses count as serious drug offenses within the meaning of ACCA. The Shepard documents reveal that Chambliss was convicted of the "sale or delivery of cocaine" on both occasions in violation of Fla. Stat. § 893.13(1)(a). Both convictions were second degree felonies, which means Chambliss was convicted under Fla. Stat. § 893.13(1)(a)(1). Sale of cocaine with intent to distribute under Fla. Stat. § 893.13(1)(a)(1) qualifies as a serious drug offense

14

under ACCA.  United States v. Smith, 775 F.3d 1262, 1264–65, 1268 (11th Cir. 2014).  The district court therefore did not err when it counted both offenses before applying the ACCA enhancement.

Because Chambliss's three serious drug offenses are enough to qualify him as an armed career criminal under ACCA, see 18 U.S.C. § 924(e)(1), the district court did not err in applying the enhancement and sentencing him accordingly.

**AFFIRMED.**

15